IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EDWARD WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 23-cv-03961 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| NORTHEASTERN ILLINOIS UNIVERSITY, et al., | ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Edward Williams was a graduate student at Defendant Northeastern Illinois University ("NEIU") studying to become a teacher. While working in a student-teaching placement, Williams gave one of his students a ride home during a severe storm. Because that act was deemed a rules violation, Williams was expelled from NEIU. Williams, however, contends that NEIU expelled him without adhering to its own disciplinary procedures, and therefore he filed the present lawsuit asserting claims under 42 U.S.C. § 1983 and Illinois state law against NEIU and the NEIU employees involved in the expulsion decision—Defendants Thomas Philon, Alberto Lopez-Carrasquillo, Catherine Wycoff, Katy Smith, and Huseyin Colak (collectively, "Individual Defendants"). Defendants have filed a motion to dismiss Williams's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 15.) For the following reasons, Defendants' motion is granted.

### BACKGROUND

For the purposes of the motion to dismiss, the Court accepts all well-pleaded facts in the complaint as true and views those facts in the light most favorable to Williams as the non-

moving party. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The complaint alleges as follows.

In August 2021, Edward Williams was accepted into the Master of Arts in Teaching—Secondary Education Program ("MAT Program") at NEIU's Daniel L. Goodwin College of Education ("GCOE"). (Compl. ¶¶ 4, 11–13, Dkt. No. 1.) By the start of the Spring 2023 semester, Williams had completed 25 of the 37 credit hours required for graduation and had a 4.0 GPA. (*Id.* ¶ 47.) That same semester, Williams participated in a student-teaching placement, instructing students at Ridgewood High School in Norridge, Illinois. (*Id.* ¶ 46.) By the end of the semester, Williams expected to be in position to be certified to teach in Illinois and thus eligible to be hired as a full-time teacher. (*Id.* ¶¶ 51–52.)

On April 4, 2023, Williams was leaving Ridgewood High School when a severe hailstorm struck. (*Id.* ¶¶ 55–56.) He ran into one of his students who had no ride home and was afraid of walking in the storm. (*Id.* ¶ 56.) Williams agreed to give the student a ride home. (*Id.*) Although Williams engaged in no improper conduct during the ride, he was reported to both the GCOE and Ridgewood High School supervisors for giving the student a ride. (*Id.* ¶ 58.)

The next day, Williams was notified by Ridgewood High School that his placement had been terminated. (*Id.* ¶ 63.) He also received an email asking him to meet with GCOE faculty on April 6, 2023, to discuss his student-teaching placement. (*Id.* ¶ 60.) Thus, on April 6, Williams met with Alberto Lopez-Carrasquillo, the Associate Dean of the GCOE, Catherine Wycoff, the GCOE's Director of Clinical Experiences and Student Teaching Office, Katy Smith, a GCOE Department Chair, and Huseyin Colak, a GCOE associate professor. (*Id.* ¶¶ 7–10, 62.) Upon entering the meeting, Williams was told by Lopez-Carrasquillo and Smith not to speak and that the decision to expel him from the MAT Program had already been made. (*Id.* ¶¶ 64–65.) About

2

a week later, Williams received a letter signed by Smith confirming his expulsion from the MAT Program. (*Id.* ¶ 71.)

Following his expulsion, Williams retained counsel, who authored a letter to NEIU and the GCOE protesting Williams's expulsion and stating that it was not imposed in accordance with the procedures set forth in NEIU's Student Code of Conduct ("Code") and the GCOE's student handbook ("GCOE Handbook"). (*Id.* ¶¶ 15, 18, 30, 74.) In response, NEIU informed Williams that it would "not be recognizing the letter" but that Williams would receive an opportunity to write an appeal letter. (*Id.* ¶ 75.) On April 27, 2023, Williams provided NEIU with his appeal letter, which discussed the lack of process he received prior to his expulsion and emphasized the severe consequences he would suffer from that discipline. (*Id.* ¶ 76.) Williams received a denial of his appeal from the GCOE's Dean, Thomas Philon, on May 10, 2023. (*Id.* ¶ 77.) He was permitted no further process. (*Id.* ¶¶ 83–84.)

Williams claims that Defendants failed to afford him the due process required by the United States constitution before expelling him. His ten-count complaint asserts claims pursuant to 42 U.S.C. § 1983 as well as under state law. Specifically, Counts I and II allege that Defendants deprived Williams of a property interest in his continued graduate education and a liberty interest in his reputation, honor, and integrity, without providing pre- or post-deprivation process, thereby violating his Fourteenth Amendment right to procedural due process. Count III asserts a related § 1983 conspiracy claim. In Counts IV through VIII, Williams asserts state-law claims for breach of contract, breach of implied-in-fact contract, unjust enrichment, promissory estoppel, and intentional infliction of emotional distress. Count IX alleges a state-law civil

conspiracy claim. And finally, Count X is brought against only NEIU and seeks to hold it liable for Individual Defendants conduct under a *respondeat superior* theory.

## DISCUSSION

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). With their motion, Defendants seek to dismiss Williams's complaint in its entirety.

### I. Section 1983 Claims

To find a valid procedural due process claim, a court must first "determine whether the plaintiff was deprived of a protected interest" and, if so, it then "must determine what process is due." *Pugel v. Bd. of Trs. of Univ. of Ill.*, 378 F.3d 659, 662 (7th Cir. 2004). Here, Williams alleges in Count I that Defendants deprived him of a property interest and in Count II that they deprived him of a liberty interest; he claims that both deprivations occurred without due process. He also alleges an attendant conspiracy claim in Count III. Before turning to the merits of those federal claims, the Court first addresses Defendants' contention that Williams's claims are barred by the Eleventh Amendment.

#### A. Eleventh Amendment

"The Eleventh Amendment grants states immunity from private suits in federal court without their consent." *Nunez v. Ind. Dep't of Child Servs.*, 817 F.3d 1042, 1044 (7th Cir. 2016).

State agencies are treated as a State for purposes of Eleventh Amendment immunity, regardless of the nature of the relief sought. *Kroll v. Bd. of Trs. of the Univ. of Ill.*, 934 F.2d 904, 907 (7th Cir. 1991). And, as a state university, NEIU is regarded as an agency of the State of Illinois. *Alexander v. Ne. Ill. Univ.*, 586 F. Supp. 2d 905, 913–14 (N.D. Ill. 2008). Thus, the Eleventh Amendment bars a suit for damages against NEIU, unless Illinois has waived its immunity, or Congress has overridden the immunity via § 5 of the Fourteenth Amendment. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 473–74 (1987).[1] In his response brief, Williams states that he did not intend to assert his § 1983 claims directly against NEIU. Accordingly, the Court dismisses those claims against NEIU.

Defendants concede that the Eleventh Amendment poses no bar to Williams's § 1983 claims against Individual Defendants in their official capacities insofar as he seeks prospective injunctive relief. *See, e.g.*, *Driftless Area Land Conservancy v. Valcq*, 16 F.4th 508, 521 (7th Cir. 2021) ("The doctrine of *Ex parte Young*, 209 U.S. 123 (1908), creates an exception to state sovereign immunity 'by asserting that a suit challenging the constitutionality of a state official's action in enforcing state law is not one against the State.'" (quoting *Green v. Mansour*, 474 U.S. 64, 68 (1985))). They nonetheless argue that the Eleventh Amendment does not shield Individual Defendants from Williams's § 1983 claims for money damages brought against them in their individual capacities. Indeed, generally, the Eleventh Amendment does not bar suits brought against state officials in their individual capacities "because the plaintiff is seeking damages from individuals rather than from the state treasury." *Luder v. Endicott*, 253 F.3d 1020, 1022–23 (7th Cir. 2001). "The fact that the state chooses to indemnify its employees who are sued in

---

[1] In addition, the Supreme Court has determined that a State is not a "person" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65–66 (1989). That statutory interpretation likewise extends to state agencies. *See, e.g.*, *Carroll v. DeTella*, 255 F.3d 470, 471 (7th Cir. 2001).

federal court is irrelevant." *Id.* at 1023. However, a plaintiff is not permitted to "seek monetary relief from state employees in their individual capacities if the suit demonstrably has the identical effect as a suit against the state." *Haynes v. Ind. Univ.*, 902 F.3d 724, 732 (7th Cir. 2018) (internal quotation marks omitted). Specifically, Eleventh Amendment "sovereign immunity bars individual-capacity claims for damages whenever the money will flow from the state treasury to the plaintiff." *Id.* (internal quotation marks omitted).

The Seventh Circuit has found individual-capacity claims against university administrators to be tantamount to suits against the State in cases involving plaintiffs who were terminated professors seeking "backpay and other forms of monetary compensation based on an employment contract." *Id.* (quoting *Omosegbon v. Wells*, 335 F.3d 668, 673 (7th Cir. 2003)). In such circumstances, the "administrators were not parties to [the plaintiff's] employment contract in their individual capacities" such that it was "inescapable that any resulting judgment [would] be paid by the state." *Id.* (quoting *Omosegbon*, 335 F.3d at 673); *see also Wade v. Ind. Univ. Sch. of Med.*, No. 1:16-cv-02256-TWP-MJD, 2019 WL 3067519, at *8 (S.D. Ind. July 12, 2019) ("When the plaintiff seeks damages against individual defendants arising from an employment relationship, Eleventh Amendment immunity applies because any damages would be paid by the state employer."). By contrast, here, Williams's § 1983 claims against Individual Defendants concern each of their own alleged constitutional violations and seeks compensatory damages unrelated to any employment or other contract such that the damages would not flow directly from the state treasury. In these circumstances, individual-capacity claims for damages are not barred by the Eleventh Amendment. *E.g.*, *Sizyuk v. Purdue Univ.*, No. 4:20-CV-75-TLS, 2024 WL 68282, at *4 (N.D. Ind. Jan. 5, 2024). As a result, Williams's § 1983 claims for money damages against Individual Defendants survive Defendants' Eleventh Amendment challenge.

6

B.     **Property Interest**

Turning to the substance of the § 1983 claims, Williams first contends that Defendants deprived him of a protected property interest without adequate process. The Seventh Circuit has held that "students do not have a stand-alone property interest in their continued education at state universities." *Malhotra v. Univ. of Ill. at Urbana-Champaign*, 77 F.4th 532, 537 (7th Cir. 2023). Rather, the question for purposes of the due process inquiry is "whether the student has shown that he has a *legally protected entitlement* to his continued education at the university." *Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.*, 741 F.3d 769, 773 (7th Cir. 2013). "In the context of higher education, any property interest is a matter of contract between the student and the university." *Doe v. Purdue Univ.*, 928 F.3d 652, 660 (7th Cir. 2019). Thus, a student can establish a protected interest in his graduate education "by pleading the existence of an express or implied contract" with his graduate school. *Charleston*, 741 F.3d at 773. Not only must the student plead the existence of an express or implied contract, but he must also "establish that the contract entitled him to the specific right that the university allegedly took, such as the right to a continuing education or the right not to be suspended without good cause." *Doe*, 928 F.3d at 660 (internal quotation marks omitted).

Here, Williams contends that he had the right to be free from arbitrary discipline. The Seventh Circuit has recognized that a university may make an implied contract with a student to refrain from disciplining them absent good cause. *Charleston*, 741 F.3d at 773 (explaining that a plaintiff could establish an entitlement to his continued education at a university by "point[ing] to an agreement between himself and the school that he would be dismissed only for good cause"). Yet, in alleging such an implied contract, "[g]eneralities won't do; the student's complaint must be specific about the source of this implied contract, the exact promises the

7

university made to the student, and the promises the student made in return." *Doe*, 928 F.3d at 660 (internal quotation marks omitted).

To allege that he was entitled to be free from arbitrary discipline, Williams points to the extensive procedures NEIU must follow before disciplining a student as set forth in both the Code and the GCOE Handbook. (Compl. ¶¶ 18–45.) He notes that the Code explicitly provides that "[s]tudents alleged to have violated any provision of the [Code] have the right to procedural due process." (*Id.* ¶ 21.) And Williams contends that an implied contract arose between him and NEIU under which NEIU agreed to adhere to those procedures in consideration for Williams's tuition paid to the university. (*Id.* ¶¶ 14–15.) However, the Seventh Circuit has repeatedly rejected "claims of an interest in contractually-guaranteed university process." *Charleston*, 741 F.3d at 773 (internal quotation marks omitted); *see also Osteen v. Henley*, 13 F.3d 221, 225 (7th Cir. 1993) ("As we tirelessly but unavailingly remind counsel in this court, a violation of state law (for purposes of this case the student judicial code may be treated as a state law) is not a denial of due process, even if the state law confers a procedural right.").

Williams denies that he is alleging a property interest in NEIU's adherence to its own disciplinary procedures. Rather, he contends that NEIU's "Code does not permit the University to take disciplinary action against a student arbitrarily or otherwise in the absence of good cause." (Compl. ¶ 22.) Likewise, Williams asserts that the GCOE Handbook "forbids the University and its GCOE from taking disciplinary action against a student absent good cause." (*Id.* ¶ 33.) Those allegations, however, do not point to any specific provision in either the Code or the GCOE Handbook that expressly confers upon GCOE students the right not to be disciplined without good cause. *See Charleston*, 741 F.3d at 773 (finding that the plaintiff failed to plead a property interest where he did "not describe the specific promises that the university

8

made to him through its disciplinary policy"). And such a promise by NEIU is nowhere to be found in the excerpts of the Code and the GCOE Handbook that Williams included as exhibits to his complaint. It appears that Williams believes a right to be free from arbitrary discipline may be inferred from the existence of pre-disciplinary procedures. It cannot. "Process is not an end in itself. . . . The State may choose to require procedures . . . but in making that choice the State does not create an independent substantive right." *Olim v. Wakinekona*, 461 U.S. 238, 250–51 (1983); *see also Williams v. Wendler*, 530 F.3d 584, 589–90 (7th Cir. 2008) (explaining that recognizing the plaintiff's claim of a standalone "entitlement to fair procedure . . . would dissolve the requirement of showing a deprivation of life, liberty, or property as a precondition to complaining about a denial of due process"). Thus, Williams's due process claim in Count I must be dismissed for failure to allege a protected property interest.

### C. Liberty Interest

Williams also contends that Defendants deprived him of a protected liberty interest without due process. In particular, he asserts a liberty interest in his reputation, honor, and integrity. To plead a deprivation of a liberty interest, a plaintiff must "satisfy the 'stigma plus' test, which require[s] him to allege both that he suffered a reputational injury ('stigma') and an alteration in legal status that deprived him of a right he previously held ('plus')." *Malhotra*, 77 F.4th at 538.

According to Williams, his allegations satisfy the "stigma plus" test because he has pleaded that, due to his expulsion, his ability to continue his graduate education and pursue a teaching career has been significantly impeded. Yet "the loss of reputation is not itself a loss of liberty, even when it causes serious impairment of one's future employment." *Doe*, 928 F.3d at 662 (internal quotation marks omitted). Rather, "[a] state actor infringes on a liberty interest only by casting doubt on an individual's reputation to such a degree that it becomes virtually

9

impossible for the individual to find new employment in his chosen field." *Malhotra*, 77 F.4th at 538 (internal quotation marks omitted). Williams's allegations fall short of the "virtually impossible" standard as he alleges only that his expulsion will "significantly, if not permanently, impede" his ability to continue his education and "significantly risk[s] his licensure as an Illinois teacher." (Compl. ¶¶ 88–89.) Those allegations simply recognize the reality that Williams's expulsion will make it more difficult to pursue a profession in teaching and speculate that it may be virtually impossible for him to do so. That does not suffice to plead the deprivation of a liberty interest. *See Malhotra*, 77 F.4th at 538 ("While we acknowledge that future schools and employers might not look favorably on a suspension for violating the University's rules, it is far from clear that they would reflexively turn [the plaintiff] away for that reason."); *Doe v. Bd. of Trs. of Univ. of Ill.*, 429 F. Supp. 2d 930, 942–43 (N.D. Ill. 2006) ("Though [the plaintiff's] dismissal from the University may hamper his chances of completing medical school and becoming a physician, that by itself does not implicate a protected liberty interest."); *see also Townsend v. Vallas*, 256 F.3d 661, 671 (7th Cir. 2001) ("[A] requirement that the employee show that he suffered a tangible loss of other employment opportunities is consistent with the case authority insisting that a liberty interest claim not be unduly speculative.").

Although not raised by Defendants, the Court notes another deficiency with respect to Williams's liberty-interest due process claim. In particular, the "stigma plus" test is not satisfied simply by "[t]rue but stigmatizing statements"; the statements must be defamatory, meaning that they are "false assertions of fact." *Strasburger v. Bd. of Educ., Hardin Cnty. Cmty. Unit Sch. Dist. No. 1*, 143 F.3d 351, 356 (7th Cir. 1998). A bare statement that Williams was expelled does not suffice—since that is a truthful statement. To the extent Williams contends that Defendants publicized their asserted reason for expelling him, that statement is also true given that Williams

admits that he gave his student a ride home. Whether it was proper for Defendants to expel Williams for what he believes was a "compassionate gesture shown to [his] student" (Compl. ¶ 58) has no bearing on the liberty-interest inquiry. Defendants determined that act, by itself, warranted Williams's expulsion even though, as Williams himself acknowledges, Defendants made no further allegation that anything untoward happened during that ride. (*Id.* ¶ 57 ("At no time during April 4, 2023, ride [*sic*], or at any time before, did Mr. Williams engage in any untoward conduct with this student, nor has such an allegation ever been made.").) The complaint is devoid of any allegation of a false, defamatory statement to support Williams's liberty-interest claim.

In sum, Williams's has failed to plead that he was deprived of a liberty interest under the "stigma plus" test. Accordingly, Count II's procedural due process claim is dismissed.

### D. Section 1983 Conspiracy

In Count III, Williams alleges that Defendants conspired with each other to violate Williams's due process rights. However, because Williams has failed to state a cognizable § 1983 claim against Defendants, his § 1983 civil conspiracy claim must be dismissed as well. *Dyson v. City of Calumet City*, 306 F. Supp. 3d 1028, 1046 (N.D. Ill. 2018).

### II. Supplemental Jurisdiction over State-Law Claims

Having dismissed the § 1983 claims over which this Court has original jurisdiction pursuant to 28 U.S.C. § 1331, the Court must now decide whether to relinquish its supplemental jurisdiction over the remaining state-law claims asserted in Counts IV through X. *See* 28 U.S.C. § 1367. "Although the decision is discretionary, when all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over supplemental state-law claims." *RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476,

479 (7th Cir. 2012) (internal quotation marks omitted). That presumption can be rebutted under certain circumstances, including where:

> (1) the statute of limitations has run on the pendant claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendant claims can be decided.

*Id.* at 480. The circumstances here do not rebut the presumption in favor of relinquishing federal jurisdiction. The matter is still in its early stages and there are no pressing statute of limitations issues. Nor does this Court believe that it is absolutely clear how the state-law claims will be decided. Consequently, the Court declines to exercise supplemental jurisdiction over the state-law claims, and Counts IV through X are dismissed as well.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 15) is granted. Williams's complaint is dismissed without prejudice. He is granted leave to file an amended complaint that remedies the pleading deficiencies with respect to the federal claims within fourteen days. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and Northwest Indiana*, 786 F.3d 510, 519 (7th Cir. 2015) ("Ordinarily, however, a plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed.") If Williams declines to file an amended complaint by that date, the federal claims will be dismissed with prejudice and final judgment will be entered in favor of Defendants.

ENTERED:

Dated: June 11, 2024

_____
Andrea R. Wood
United States District Judge