IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDWARD WILLIAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 23-cv-03961 |
| v. | ) |
| | ) Judge Andrea R. Wood |
| NORTHEASTERN ILLINOIS UNIVERSITY, et al., | ) |
| | ) |
| Defendants. | ) |

**ORDER**

Defendants' motion to dismiss the First Amended Complaint [39] is granted. The federal claims in the First Amended Complaint are dismissed with prejudice, while the state-law claims are dismissed without prejudice to Plaintiff pursuing them in a state court of competent jurisdiction. The Clerk is directed to enter Judgment in favor of Defendants. Telephonic status hearing set for 2/11/2025 is stricken. Civil case terminated. See the accompanying Statement for details.

**STATEMENT**

Plaintiff Edward Williams was a graduate student at Northeastern Illinois University ("NEIU") studying to become a teacher. While working in a student-teacher placement, Williams gave one of his students a ride home during a severe storm. NEIU deemed the act a violation of its rules and expelled Williams. In response, Williams filed this lawsuit claiming that NEIU expelled him without adhering to its own disciplinary procedures. After the Court dismissed his original complaint, Williams filed the First Amended Complaint ("FAC"), which asserts claims under 42 U.S.C. § 1983 and Illinois state law against the NEIU employees involved in the expulsion decision—Defendants Thomas Philion, Alberto Lopez-Carrasquillo, Catherine Wycoff, Katy Smith, and Huseyin Colak. Defendants now ask the Court to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 39.)

**I.**

The factual allegations in the FAC are nearly identical to those of the original complaint. For the purposes of the instant motion to dismiss, the Court once again accepts all well-pleaded facts as true and views those facts in the light most favorable to Williams as the non-moving party. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).

In August 2021, Williams was accepted into the Master of Arts in Teaching—Secondary Education Program at NEIU's Daniel L. Goodwin College of Education ("GCOE"). (FAC ¶¶ 4,

11–13, Dkt. No. 36.) By the start of the Spring 2023 semester, Williams had completed 25 of the 37 credit hours required for graduation and had a 4.0 GPA. (*Id.* ¶ 54.) That same semester, Williams participated in a student-teaching placement, instructing students at Ridgewood High School in Norridge, Illinois. (*Id.* ¶ 53.) By the end of the semester, Williams expected to be in position to be certified to teach in Illinois and thus eligible to be hired as a full-time teacher. (*Id.* ¶¶ 58–59.)

On April 4, 2023, Williams was leaving Ridgewood High School when a severe hailstorm struck. (*Id.* ¶¶ 62–63.) He ran into one of his students who had no ride home and was afraid of walking in the storm. (*Id.* ¶ 63.) Williams agreed to give the student a ride home. (*Id.*) Although Williams engaged in no improper conduct during the ride, he was reported to both the GCOE and Ridgewood High School supervisors for giving the student a ride. (*Id.* ¶ 65.)

The next day, Williams was notified by Ridgewood High School that his placement had been terminated. (*Id.* ¶ 70.) He also received an email asking him to meet with GCOE faculty on April 6, 2023, to discuss his student-teaching placement. (*Id.* ¶ 67.) Thus, on April 6, Williams met with Alberto Lopez-Carrasquillo, the Associate Dean of the GCOE, Catherine Wycoff, the GCOE's Director of Clinical Experiences and Student Teaching Office, Katy Smith, a GCOE Department Chair, and Huseyin Colak, a GCOE associate professor. (*Id.* ¶¶ 6–9, 69.) Upon entering the meeting, Williams was told by Lopez-Carrasquillo and Smith not to speak and that the decision to expel him had already been made. (*Id.* ¶¶ 71–72.) About a week later, Williams received a letter signed by Smith confirming his expulsion. (*Id.* ¶ 78.) Subsequently, Williams wrote an appeal letter complaining that his expulsion was not imposed in accordance with the procedures set forth in NEIU's Student Code of Conduct ("Code") and the GCOE's student handbook ("Handbook"), but his appeal was denied. (*Id.* ¶¶ 15, 18, 30, 81–84.) He was permitted no further process. (*Id.* ¶¶ 90–91.)

Williams contends that Defendants failed to afford him the due process required by the United States Constitution before expelling him. Williams's original complaint asserted claims pursuant to 42 U.S.C. § 1983, alleging that Defendants deprived him of both a property interest and a liberty interest without providing pre- or post-deprivation process, in violation of his Fourteenth Amendment right to procedural due process, along with several state-law claims. The Court granted Defendants' motion to dismiss the original complaint, finding that Williams failed to allege a protected property or liberty interest and therefore did not state a viable § 1983 claim. It then relinquished supplemental jurisdiction over Williams's state-law claims.

Williams was granted leave to amend his complaint and filed the FAC. New to the FAC are six paragraphs that advance legal arguments in apparent response to this Court's previous ruling that Williams failed to allege adequately a property interest with respect to his § 1983 procedural due process claim. (*See* FAC ¶¶ 47–52.) Those paragraphs purport to identify two constitutionally protected interests (Williams's right to a continued education and his right to be free from arbitrary discipline) and elaborate on the source from which those claimed interests are derived. Like the original complaint, the FAC asserts a § 1983 procedural due process claim based on a purported deprivation of a property interest, along with a related § 1983 conspiracy claim. In addition, the FAC asserts state-law claims for breach of contract, breach of implied-in-fact

contract, unjust enrichment, promissory estoppel, intentional infliction of emotional distress, and civil conspiracy.

## II.

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). Defendants contend that the FAC fails to remedy the original complaint's deficiencies and should therefore be dismissed—this time with prejudice.

To find a valid procedural due process claim, a court must first "determine whether the plaintiff was deprived of a protected interest" and, if so, it then "must determine what process is due." *Pugel v. Bd. of Trs. of Univ. of Ill.*, 378 F.3d 659, 662 (7th Cir. 2004). Whereas Williams's original complaint brought procedural due process claims based on an alleged deprivation of both a property interest and a liberty interest, the FAC alleges only a deprivation of a property interest.

The Seventh Circuit has held that "students do not have a stand-alone property interest in their continued education at state universities." *Malhotra v. Univ. of Ill. at Urbana-Champaign*, 77 F.4th 532, 537 (7th Cir. 2023). Rather, the question for purposes of the due process inquiry is "whether the student has shown that he has a ***legally protected entitlement*** to his continued education at the university." *Charleston v. Bd. of Trs. of Univ. of Ill. at Chi.*, 741 F.3d 769, 773 (7th Cir. 2013). "In the context of higher education, any property interest is a matter of contract between the student and the university." *Doe v. Purdue Univ.*, 928 F.3d 652, 660 (7th Cir. 2019). Thus, a student may establish a protected interest in his graduate education "by pleading the existence of an express or implied contract" with his graduate school. *Charleston*, 741 F.3d at 773. Not only must the student plead the existence of an express or implied contract, he must also "establish that the contract entitled him to the specific right that the university allegedly took, such as the right to a continuing education or the right not to be suspended without good cause." *Doe*, 928 F.3d at 660 (internal quotation marks omitted). "Generalities won't do; the student's complaint must be specific about the source of this implied contract, the exact promises the university made to the student, and the promises the student made in return." *Id.* (internal quotation marks omitted).

In his original complaint, Williams contended that he had an implied contract with NEIU under which he and other students were entitled to freedom from arbitrary discipline. According to Williams, that implied contract could be found in the extensive disciplinary procedures set forth in both the Code and Handbook. In dismissing the original due process claim, however, the Court concluded that Williams failed to plead a cognizable property interest because he did not identify any provision in either the Code or the Handbook that conferred upon GCOE students the right not to be disciplined without good cause. Such a right could not be inferred simply from the existence of pre-disciplinary procedures because "[p]rocess is not an end in itself. . . . The State

3

may choose to require procedures . . . but in making that choice the State does not create an independent substantive right." *Olim v. Wakinekona*, 461 U.S. 238, 250–51 (1983).

With his FAC, Williams now claims to assert two property interests. First, Williams again argues that the Code and the Handbook confer upon him a right to be free from arbitrary discipline. While Williams acknowledges that this claimed interest is the same one that the Court previously found unavailing, he nonetheless argues that this Court should reconsider its conclusion. Williams fails to convince the Court that it erred in its prior analysis and the Court stands by its original ruling regarding Williams's claimed right to be free from arbitrary discipline.

Second, the FAC newly asserts that Williams had a protected interest in continuing his graduate education.[1] Williams argues that Illinois law establishes that his payment of tuition to NEIU gave rise to an implied contract that NEIU would award him a degree upon his completion of the degree requirements. However, the notion that a student's mere payment of tuition creates an implied contract that his school will not discipline him absent good cause is directly contrary to Seventh Circuit precedent. *Malhotra*, 77 F.4th at 537 ("[The plaintiff] assumes on appeal that his act of paying tuition created a return promise from the University to either suspend him only for good cause or to follow its procedures when deciding whether to suspend him. . . . [O]ur case law does not allow us to make this assumption . . . .").

It is true that while "Illinois courts have not identified clearly a property right in post-secondary education," they "have found that the payment of tuition to an educational institution ordinarily gives rise to an implied contract that the school will award a degree upon the student's satisfaction of the degree requirements established by the school." *Galdikas v. Fagan*, 342 F.3d 684, 692 (7th Cir. 2003), *abrogated on other grounds by Spiegla v. Hull*, 371 F.3d 928 (7th Cir. 2004). But without more, the mere fact of a student's contract with the university does not plead a protectible property interest in his continued education. *Doe*, 928 F.3d at 660. There must be some specific contractual entitlement. The Seventh Circuit has provided the following example:

> Suppose a student had a contract with the college in which he promised to pay tuition, in an amount specified by the college, on the first day of each quarter, and in exchange the college promised not to suspend him unless he hazed another student. The contract would create an entitlement, so that if the college suspended him for hazing and he denied it he would be entitled to a hearing.

*Williams v. Wendler*, 530 F.3d 584, 589 (7th Cir. 2008). By contrast, the FAC here is devoid of allegations of any specific return promise Williams received from NEIU in exchange for his tuition.

As with the original complaint, the FAC fails to plead a protectible property interest because it cannot "point to an identifiable contractual promise that the university failed to honor."

---

[1] Notably, in opposing dismissal of his original complaint, Williams "expressly disavowed any argument that he had a protected interest in his continued post-graduate education." (Pl.'s Sur-reply in Opp'n to Mot. to Dismiss at 3, Dkt. No. 24-1.)

4

*Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009) (internal quotation marks omitted). For that reason, Williams's procedural due process claim is dismissed again. And since Williams cannot plead any constitutional violation, his § 1983 conspiracy claim necessarily fails as well. *Dyson v. City of Calumet City*, 306 F. Supp. 3d 1028, 1046 (N.D. Ill. 2018). Moreover, because the FAC's due process claim basically amounted to a recharacterization of the same allegations from the original complaint, the Court sees no basis to allow a further amendment and dismisses the § 1983 claims with prejudice. Finally, having dismissed the § 1983 claims over which it has original jurisdiction pursuant to 28 U.S.C. § 1331, the Court again relinquishes its supplemental jurisdiction over the remaining state-law claims.

## III.

For the foregoing reasons, Defendants' motion to dismiss the FAC (Dkt. No. 39) is granted. The federal claims in the FAC are dismissed with prejudice while the state-law claims are dismissed without prejudice to Plaintiff bringing them a state court of competent jurisdiction.

Dated: February 11, 2025

Andrea R. Wood
United States District Judge